**FIRST NATIONAL BANK OF MEEKER, Plaintiff–Appellant and Cross–Appellee,**

v.

**Mike THEOS, Defendant–Appellee and Cross–Appellant,**

v.

**C.J. WILSON, Counterclaim Defendant–Appellant and Cross–Appellee.**

Nos. 88CA0299, 88CA0332.

Colorado Court of Appeals, Div. I.

Jan. 18, 1990.

Rehearing Denied March 8, 1990.

Certiorari Denied July 30, 1990.

Delaney & Balcom, P.C., Lawrence R. Green, Glenwood Springs, for plaintiff-appellant and cross-appellee First Nat. Bank of Meeker.

Coleman, Brown & Jouflas, Joseph Coleman, Grand Junction, for defendant-appellee and cross-appellant Mike Theos.

Vinton, Slivka & Panasci, Michael J. Healey, Denver, for counterclaim defendant-appellant and cross-appellee C.J. Wilson.

Opinion by Judge HUME.

Plaintiff, First National Bank of Meeker (Bank), appeals a judgment entered upon jury verdicts that awarded damages to defendant, Mike Theos, on his counterclaims for interference with business advantage, deceit, breach of contract, and negligence. Theos cross-appeals a judgment and decree of foreclosure entered in favor of the Bank. C.J. Wilson, counterclaim-defendant, filed a separate appeal from a judgment entered on a jury verdict that awarded Theos damages against Wilson for breach of fiduciary duty. The separate appeals have been consolidated here. We reverse and remand with directions.

The Bank's complaint, filed in October 1984, sought judicial foreclosure of a lien allegedly created by a deed of trust given by Mike and Toula Theos to secure indebtedness evidenced by several promissory notes. Mike Theos answered admitting his execution of the notes and security instruments as alleged by the Bank and his failure to make payments as required by the notes. He contested the amount due and payable on the notes and the validity of the asserted lien. He also counterclaimed for damages allegedly resulting from the Bank's breach of an implied covenant, breach of fiduciary duty, intentional interference with a contractual relationship, negligence, and deceit, and asserted a demand for a jury trial.

Approximately seventeen months after the commencement of the action, Theos requested leave to add Wilson as an additional "counterclaim defendant." That motion was granted by the court. Still later, on March 28, 1986, Theos commenced a separate action against the Bank and Wil-

son by filing a complaint which asserted the same claims he had previously asserted in his answer and counterclaim. Simultaneously with that filing, Theos filed a motion in the Bank's action seeking to consolidate the two actions in which he stated that the sole purpose of his separate action was to insure his previously asserted right to a jury trial on the counterclaims. The motion to consolidate was granted.

Although the Bank consistently opposed and moved to strike Theos' demand for jury trial, the record does not reflect any similar opposition to a jury trial by Wilson.

## I.

■ We reject Theos' contention that the Bank's right to appeal is precluded by its action in seeking appointment of a receiver to manage the property after entry of judgment in the trial court.

Theos' reliance upon *Wilson v. Automotive Owners Association Insurance Co.,* 152 Colo. 431, 382 P.2d 815 (1963) is misplaced. In that case, our supreme court analyzed and adopted the general rule that a judgment creditor's acceptance of an award or legal advantage under a judgment constitutes a waiver of the creditor's right to review of such judgment. A party asserting waiver of a right of review under the *Wilson* rule must establish that: 1) The judgment creditor *actually received* a benefit or advantage pursuant to the judgment he seeks to appeal, and 2) a possible result of the appeal may remove the creditor's entitlement to the benefit he had taken or received under the judgment.

In *Wilson,* the judgment creditor had withdrawn the debtor's funds deposited into the court registry and executed a satisfaction of her judgment. Thus, the creditor had actually received the benefit of the judgment that was the subject of the appeal. The court reasoned that since the judgment creditor's appeal could result in the vacation of the judgment which she had already accepted, either the doctrine of waiver or estoppel precluded her right to appeal.

Here, the Bank has received no benefit or advantage under the court's judgment.

No execution has issued and no money or property has been conveyed to the Bank as a result of the trial court's judgment. Both Theos and the Bank have sought and obtained stays of execution preventing enforcement of their respective judgments pending resolution of this appeal.

Although the Bank's motion for appointment of a receiver was granted after the entry of judgment, the Bank has yet to receive any benefit or advantage from the receivership. The money and property placed under the control of the receiver remains subject to such disposition as is ultimately determined by the court upon final determination of all the issues in the case.

Hence, we conclude that a reversal of the judgment on appeal will not affect the Bank's entitlement to a benefit that it actually received under the judgment, and that the Bank's appeal is not precluded.

## II.

■ The Bank contends that the court erred in denying its motions to strike Theos' jury demand; that the verdicts were so inconsistent as to manifest the jury's misunderstanding of the instructions and the law; that the damage verdicts were based upon the jury's speculation and passion rather than upon the evidence and the law; and that the court erred in admitting certain evidence offered by Theos. We agree that the court should have rejected Theos' request for a jury trial, and reverse the judgments insofar as they represent the court's adoption of jury verdicts as to issues between the Bank and Theos.

## A.

■ There is no constitutionally guaranteed right to a jury trial in a civil proceeding conducted before Colorado state courts. *Kaitz v. District Court,* 650 P.2d 553 (Colo. 1982). Rather, such right is derived from C.R.C.P. 38 only in actions at law, in contrast to those brought in equity. *Setchell v. Dellacroce,* 169 Colo. 212, 454 P.2d 804 (1969).

■ It is the character of the complaint, rather than that of any counterclaims or defenses subsequently asserted, that fixes the nature of the suit and determines whether it should be tried in equity or at law. *Miller v. District Court,* 154 Colo. 125, 388 P.2d 763 (1964). And, if both legal and equitable claims are joined in a plaintiff's complaint, the trial court must determine whether the basic thrust of the action is legal or equitable in nature. *Miller v. Carnation Co.,* 33 Colo.App. 62, 516 P.2d 661 (1973).

Actions seeking judicial foreclosure of liens have traditionally been considered equitable proceedings. *Miller v. District Court, supra; Neikirk v. Boulder National Bank,* 53 Colo. 350, 127 P. 137 (1912). Although such actions typically involve determinations of the existence and amount of indebtedness, and although any ensuing foreclosure decree typically includes a personal monetary award against the debtor founded in contract, the basic thrust of foreclosure proceedings has nevertheless been held to be equitable. *Miller v. District Court, supra.*

■ Here, the Bank made a timely pretrial request to strike Theos' jury demand, renewed the motion after it was initially denied, and thereafter unsuccessfully attempted to initiate original proceedings to require a trial to the court. Thus, the Bank cannot be deemed to have consented to a jury trial. *See Mountain States Telephone & Telegraph Co. v. DiFede,* 780 P.2d 533 (Colo.1989).

Although a trial court may empanel an advisory jury over the objections of a party in an equitable action, the jury's findings in such advisory capacity do not constitute final or binding resolutions of disputed issues. Rather, the court remains the ultimate fact-finder and is required to make findings and conclusions in support of its judgment. *See* C.R.C.P. 39(c) and C.R.C.P. 52(a). *See also Mountain States Telephone & Telegraph Co. v. DiFede, supra; Young v. Colorado National Bank,* 148 Colo. 104, 365 P.2d 701 (1961).

Here, the court did not empanel the jury in an advisory capacity, nor did it make findings and conclusions to support the judgment. Instead, the court accepted the jury's verdicts as binding determinations of the issues submitted and entered judgments on those verdicts.

Hence, we conclude that the court committed reversible error in denying the Bank's motion to strike Theos' jury demand, and in treating the jury's verdicts as determinative of the issues framed by the pleadings between Theos and the Bank.

#### B.

Since this matter must be remanded for the trial court's reconsideration and its entry of findings of fact and conclusions of law, we decline to consider the Bank's contentions concerning the inconsistency of the verdicts and whether those verdicts were supported by competent and admissible evidence.

#### III.

On cross-appeal, Theos first contends that the court erred in entering a directed verdict determining that the Bank held an enforceable lien based upon the recording of its collateral deed of trust. Although entry of a directed verdict was unnecessary since that issue was properly determinable by the court, nevertheless, our review of the record reveals no substantive error in the court's determination.

The court's findings and conclusions that the parties intended the collateral deed of trust as a security instrument for the indebtedness owed to the Bank are amply supported by evidence in the record. However, since those findings and conclusions were made by the court in ruling upon a motion for directed verdict, it will be necessary that they be included in the findings and conclusions supporting the final judgment to be entered upon remand. In addition, the court will be required to determine and make findings as to the amount of Theos' indebtedness under the notes and security instrument in favor of the bank.

■ Theos also contends that the court erred in entering separate judgments in

favor of the Bank and in favor of Theos on his counterclaim, rather than setting off one award against the other before entering a single judgment. Although we have now reversed both judgments, we note for the court's guidance on remand that the proper practice is to enter a single judgment for the net balance of countervailing awards between a plaintiff and a counterclaimant. *See York Plumbing & Heating Co. v. Groussman Investment Co.,* 166 Colo. 382, 443 P.2d 986 (1968); *Forsyth v. Associated Grocers of Colorado, Inc.,* 724 P.2d 1360 (Colo.App.1986).

### IV.

Neither Wilson nor Theos has claimed that the court erred in submitting Theos' claims against Wilson for determination by the jury, and we thus express no opinion as to whether third-party legal claims properly may be submitted for jury determination if they are joined in an action which is equitable in nature.

Since Wilson did not object to Theos' jury demand prior to the trial, we conclude that Theos' claims against Wilson were consensually tried by the jury irrespective of whether a right to jury trial existed. Hence, we conclude that the judgments entered on the jury's verdicts are final and binding determinations of Theos' claims against Wilson, subject to review of such issues as were preserved by timely notice of appeal. *Mountain States Telephone & Telegraph Co. v. DiFede, supra; Young v. Colorado National Bank, supra.* See also *Barlow v. Staples,* 28 Colo. App. 93, 470 P.2d 909 (1970).

We also decline to address the related issue of whether the jury's findings on such factual legal issues are binding upon the court's determination of the same factual issues in the equitable proceedings.

For example, we do not here decide whether the jury's finding that Wilson *was not* negligent would preclude a finding by the court that Wilson *was* negligent and that his negligence is imputable to the Bank. We deem such issues to be premature as they have not been postured properly by the record now before us, nor have

they been addressed either by the trial court or by counsels' briefs on appeal.

The trial court must consider those issues on remand and address them to the extent necessary and appropriate in its findings and conclusions supporting entry of judgment on remand.

### V.

Wilson contends that the verdict and judgment against him on Theos' counterclaims for breach of fiduciary duty were induced by improper instructions, and that the verdict was not supported by legally sufficient evidence. We agree that the court's instructions on that issue improperly state the law, and conclude that the resulting verdict was inconsistent with express findings made by the jury on other related claims.

The court gave two instructions to the jury concerning Theos' counterclaim that Wilson and the Bank had breached a fiduciary duty owed to him. One instruction advised the jurors that in order for Theos to recover they must find: (1) that the Bank or Wilson must have had a fiduciary relationship with Theos; (2) that the duty arising from such relationship was breached; and (3) that the breach of fiduciary duty caused damage to Theos.

The second instruction stated:

"In the absence of special circumstances, the legal relationship between a lending institution and its customer is that of debtor and creditor. While there is no per se fiduciary relationship between a borrower and a lender, a fiduciary duty may arise from a business or confidential relationship which impels or induces one party to relax the care and vigilance it would and should have ordinarily exercised."

It is true that no per se fiduciary relationship exists by virtue of the borrower-lender relationship between a bank or a bank's officer and a customer of the bank. *Rubenstein v. South Denver National Bank,* 762 P.2d 755 (Colo.App.1988). However, a confidential relationship may arise

under circumstances in which a person occupies a superior position over another with the opportunity to use that superiority to his advantage over the other. *United Fire & Casualty Co. v. Nissan Motor Corp.*, 164 Colo. 42, 433 P.2d 769 (1967).

■ Similarly, a confidential relationship may arise if: (1) one party has taken steps to induce another to believe that it can safely rely on the first party's judgment or advice, *see Restatement (Second) of Contracts* § 161d comment f (1982); (2) one person has gained the confidence of the other and purports to act or advise with the other's interest in mind, *see Restatement (Second) of Trusts* § 2 comment b (1959); or (3) the parties' relationship is such that one is induced to relax the care and vigilance one ordinarily would exercise in dealing with a stranger, *see Dolton v. Capitol Federal Savings & Loan Ass'n*, 642 P.2d 21 (Colo.App.1981).

■ In summary, although a confidential relationship may arise from a multitude of circumstances, the party claiming its existence must show that he justifiably reposed a special trust or confidence in the other to act in the claimant's interest. *Page v. Clark*, 197 Colo. 306, 592 P.2d 792 (1979). The party claiming a confidential relationship must show, by a preponderance of the evidence, that a special trust or confidence was in fact reposed, that its reposition was justifiable, and that the other party either invited or ostensibly accepted the trust imposed. *See Page v. Clark; Dolton v. Capitol Federal Savings & Loan Ass'n, supra.*

Here, Theos contended that he reposed a special trust and confidence in Wilson's advice as a result of 20 years of prior business dealings plus a long-standing social relationship. Specifically, Theos testified that he had previously received advice from Wilson on several occasions, that he had sometimes acted in accord with such advice, and that, on other occasions, he had ignored it. He further testified that during their 20-year acquaintance, he and his former spouse had dined with Wilson and his wife on three or four occasions. He also described having had discussions with Wil-

son about their possible involvement in a joint investment venture, unrelated to the transaction at issue, that had been rejected and abandoned many years previously.

Hence, Theos argues, because of his special trust and confidence in Wilson's opinions and business acumen, he relied upon Wilson's assessment that Theos' attempts to sell his ranch to Arrigo were "dead" and that, accordingly, he was induced to pursue a less attractive alternative offer made by another person. It is against this factual backdrop that the court's instructions must be considered.

■ Initially, we note that the trial court seemingly equated the term "fiduciary duty" with a "confidential relationship." Violation of a fiduciary duty may result in certain consequences as to transactions between the parties which flow as a matter of law from that relationship. If only a confidential relationship is established, however, such consequences do not automatically follow. The existence of a confidential relationship is simply one of the elements to be considered in determining whether there is fraud, undue influence, overreaching, or other improper conduct. The burden is upon the party asserting a confidential relationship to show that the other took such advantage of that relationship as to make his conduct improper. *See* A. Scott, *Trusts* § 2.5 (3d ed. 1967); *see also* D. Dobbs, *Remedies* § 10.4 (1973).

The court's instructions failed to advise the jury that Theos was required to demonstrate that his repose of trust in Wilson or the Bank was justified, or that those in whom the confidence was in fact reposed had either invited, ostensibly accepted, or acquiesced in his trust, and had assumed some duty to represent Theos' interest in the subject of the trust. Further, the court did not instruct the jurors that they should consider whether Wilson either knew or should have known that Theos was relying on him to look out for, or to render advice concerning, Theos' interests in the Arrigo matter. And, finally, the court's instructions did not advise the jury that it must determine the scope and nature of whatever duty might have been engendered by the

alleged confidential relationship as a predicate for a finding that the duty had been breached. *See Umbaugh Pole Building Co. v. Scott,* 58 Ohio St.2d 282, 390 N.E.2d 320 (1979); *Klein v. First Edina National Bank,* 293 Minn. 418, 196 N.W.2d 619 (1972).

In effect, the court's instructions erroneously advised the jury that if Theos trusted Wilson or the Bank, whether or not the trust was justified and irrespective of the awareness of Wilson or the Bank of the existence of that trust, it could find a breach of an undefined duty arising from a confidential relationship.

 Here, the jury found that Wilson did not act fraudulently or negligently with respect to the Arrigo transaction, that he did not breach any contractual obligation owed to Theos, and that he did not wrongfully interfere with the consummation of the Arrigo contract. We fail to perceive other duties which arguably could have arisen from the alleged confidential relationship.

There was no evidence that Wilson profited from Theos' decision to forego the consummation of the Arrigo contract or that he benefited by Theos' pursuit of the alternative offer. No abuse of any duty to maintain the confidentiality of financial or contractual information was alleged or shown. Moreover, the evidence is undisputed that Theos was represented by independent counsel in the Arrigo transaction, and that Wilson was aware of that fact.

Theos has not appealed the judgment based upon the jury's verdicts favorable to Wilson, and that portion of the judgment is final. Since the verdict on the fiduciary duty claim is inconsistent with the other findings made by the jury as to Wilson's conduct, we conclude that entry of a judgment for Theos on the fiduciary duty claim is precluded by the jury's binding and conclusive findings on the other claims. Hence, we direct the vacation of the judgment against Wilson on Theos' breach of fiduciary duty claim.

The judgments are reversed, and the cause is remanded with instructions that the trial court make findings of fact and

conclusions of law as to the claims and counterclaims between the Bank and Theos, and for entry of an appropriate judgment in accord with the views expressed herein. The trial court is also instructed to enter judgment for Wilson on all claims asserted against him by Theos.

PIERCE and TURSI, JJ., concur.