### In re FIELDING.

(District Court, W. D. Missouri, W. D. October 6, 1899.)

BANKRUPTCY—COMMISSIONS OF REFEREE AND TRUSTEE—DIVIDENDS.

Under Bankruptcy Act 1898, §§ 40, 48, providing that referees and trustees in bankruptcy shall be entitled to receive commissions on "sums to be paid as dividends" by the estates administered by them, these officers are not entitled to commissions on disbursements made in payment of those creditors who are entitled, under the act, to priority of payment, and to full satisfaction, before distribution to general creditors begins, the sums paid to these preferred creditors not being "dividends," within the meaning of the law.

In Bankruptcy. On question certified by referee in bankruptcy.

PHILIPS, District Judge. The administration of this estate has reached the point of declaring a final dividend and closing the trusteeship. The report of the trustee shows that the aggregate amount of funds of the estate which came into his hands is $70,487.99. The expenses of the administration and claims entitled to priority and which have been paid or ordered paid amount to $4,695.81. The question now presented for determination is, on what sum of the estate is the per centum of commission of the referee and trustee to be calculated? Is it on the whole fund coming into the hands of the trustee, or is it to be limited to the residue after deducting the expenses of administration and the preferred claims? These questions must be answered by the statute as the sole book of reference.

### Section 40 (a) of the bankrupt act declares:

"Referees shall receive as full compensation for their services, payable after they are rendered, a fee of ten dollars deposited with the clerk at the time the petition is filed in each case, except when a fee is not required from a voluntary bankrupt, and from estates which have been administered before them one per centum commissions on sums to be paid as dividends and commissions, or one half of one per centum on the amount to be paid to creditors upon the confirmation of a composition."

### Section 48 (a) declares that:

"Trustees shall receive, as full compensation for their services, payable after they are rendered, a fee of five dollars deposited with the clerk at the time the petition is filed in each case, except when a fee is not required from a voluntary bankrupt, and from estates which they have administered, such commissions on sums to be paid as dividends and commissions as may be allowed by the courts, not to exceed three per centum on the first five thousand dollars or less, two per centum on the second five thousand dollars or part thereof, and one per centum on such sums in excess of ten thousand dollars."

Section 64 (a) directs that the amount of all taxes legally due and owing by the bankrupt shall be paid by the trustee on the order of court. Subsection (b) declares what claims and expenses shall have priority, "to be paid in full out of bankrupt estates," and the order of their payment. The taxes are to be paid in full, and the priority claims are also to be paid in full, in the order named in the statute. Until these are paid, there is no fund to be divided among the general creditors. In other words, the term "dividends" can have no application to the priority claims, for the reason that the statute directs them to be paid out of the estate in full, seriatim, before the matter of declaring and paying dividends arises. This is made clear by the succeeding section 65 (a), which declares that "dividends of an equal per centum shall be declared and paid on all allowed claims, except such as have priority or are secured." It may be conceded that said section 65 (a), strictly speaking, does not undertake to define what a dividend is, but it unmistakably indicates what, in the legislative mind, was meant by the term "dividends." It is an express declaration that in this respect claims having priority are identical with secured claims, neither of which is subject to a declaration and payment of the equal per centum. In Re Ft. Wayne Electric Corp., 94 Fed. 109, it is held that the referee is not entitled to commissions on claims of secured creditors, as they are not dividends within the meaning of the statute. The same statute which declares that no dividends shall be declared and paid on secured claims makes a like declaration in respect of claims entitled to priority. As the commissions to be paid to the referee and trustee are a per centum "on sums to be paid as dividends," etc., it would seem logically to follow that, where no dividends are to be declared and paid, no commissions for the referee and trustee can be predicated. Both in common and legal parlance the term "dividends" implies a portion of a fund divided among several owners. Bouvier defines it primarily as "a portion of the principal or profit divided among several owners of a thing." Black, in his Law Dictionary, defines it primarily as "a fund to be divided. * * * In bankruptcy or insolvency practice, a dividend is a proportional payment to the creditors out of the insolvent estate." In either case the definition carries

with it the idea of the division of a fund owned by several parties, and the dividend is the aliquot portion of the estate of the common owners.   In the claims entitled to priority there can be no common or proportionate ownership to be ascertained as the subject of dividends, as such claims are to be paid in full, as an entirety, in the order named in the statute.   No notice of claims entitled to priority is required to be given to the creditors, as they are to be paid in full directly; and the general creditors therefore have no participation or interest in this fund, as it is not the subject of dividends.   No commission or per centum can be deducted from the priority claims, for the reason that they are to be paid in full.   Therefore, if commissions should be allowed on the aggregate amount of the estate coming into the hands of the trustee, the whole burden of such commissions would fall upon the general creditors, part of which commissions would be based upon a fund which never became the subject of dividends; thereby still further diminishing the distributive shares of the general creditors.   Under the act of 1800 (section 47) compensation for ministerial officers was allowed by the court, and the amount thereof was discretionary with the court. The act of 1841 (section 6) authorized the courts to prescribe a tariff of fees and charges, without fixing the compensation in any other way.   The act of 1867 (section 28) allowed the assignee a graduated per centum on the moneys "received and paid out"; in other words, his commission was predicated upon all moneys received and paid out by him, no matter whether as preferred or general funds.   And by section 47 of that act the register was allowed fees dependent upon his work and time.   Such fees were paid him by the clerk out of a deposit of $50, made when the petition was filed.   By the amendatory act of 1874 these fees were cut in two.   The provisions of the act of 1898, giving to the referee and trustee a per centum on "dividends," are, therefore, quite significant.   The statute in other respects, as in section 56 (b), indicates that congress distinguished between claims secured and entitled to priority and general creditors.   It declares that "creditors holding claims which are secured or have priority shall not, in respect to such claims, be entitled to vote at creditors' meetings, nor shall such claims be counted in computing either the number of creditors or the amount of their claims, unless the amounts of such claims exceed the values of such securities or priorities, and then only for such excess."

It has been suggested that, inasmuch as the trustee has a duty to perform in making out warrants or checks for the payment of priority claims, and the responsibility of this fund passing through his hands, he ought to be entitled to a commission as compensation. If this argument be valid, it must apply equally to all the classes of priority claims as to any one.   The costs of preserving the estate, to be first paid, would likewise be subject to the commission, with which the referee has nothing to do; as also to the filing fees paid by the petitioning creditors in involuntary cases, with which neither the referee nor the trustee has anything to do, as these fees are deposited with and paid out by the clerk under order of court.

It is also suggested that the term "dividends," as employed in

section 66 of the act, respecting the disposition of dividends remaining uncalled for after a certain lapse of time, applies as well to preferred claims as to those of general creditors. The answer to this must be that it was not contemplated by the lawmakers that priority claims would remain uncalled for. The cost of administration, attorney's fees, wages due workmen and servants, and the like, could hardly have been expected to lie long uncalled for. To those familiar with the incidents following the administration of the bankrupt act of 1867, the purpose of the provisions of said section 66 is quite obvious. It occurred under that act elsewhere, no doubt, as in this district, that dividends declared in favor of general creditors of the bankrupt, which were covered into the court registry or depository, remained uncalled for by the distributees for a great number of years; and this fund in some of the depositories was quite large. As this fund had not for so long a period been called for by the designated distributees. the question arose as to whether or not the courts ought not to hold that this seemingly abandoned fund, in equity, should either be distributed pro rata among the creditors who had not been paid in full, or returned to the bankrupt. But the better opinion seemed to be that such a contingency was a casus omissus of the bankrupt act; which section 66 of the act of 1898 sought to remedy. Its phraseology strengthens the argument that the term "dividends" employed in this statute pertains solely to the fund to be distributed pro rata among the general creditors. The uncalled-for dividends are to "be distributed to the creditors whose claims have been allowed, but not paid in full," etc. As no dividends could arise until after the claims entitled to priority have been paid in full, "the creditors whose claims have been allowed, but not paid in full." are clearly the general creditors.

The court is impressed with the fact that the conclusion reached by it may be a hardship upon the referees and trustees under certain conditions, but such considerations should be addressed to the legislative branch of the government, and cannot control the judgment of the court in applying the statute as congress has made it. The answer to the question submitted is that the per centum of commissions of the referee and trustee cannot be based upon the disbursements made in payment of claims entitled to priority, but must be limited to dividends and commissions on the residue of the estate.