JAMES DICKSON PHILLIPS, Circuit Judge:
Nationwide Insurance Co. (Nationwide) appeals the bankruptcy court’s order denying its request that the court remit the proceeds of a grain dealer’s bond which were deposited by Nationwide in an inter-pleader action. Nationwide contends that the proceeds were not property of the debt- or’s estate and that, after the defendants in the interpleader action suffered a default judgment, the bankruptcy court was bound to return the proceeds to it. Because we conclude that the bankruptcy court had jurisdiction over the action and that, by its own admission, Nationwide is a disinterested stakeholder, we affirm the bankruptcy court’s order.
I
Nationwide is the obligor of a $10,000 bond purchased by Autry Milling Co. (Au-try), a grain dealer in eastern North Carolina. Autry was required by North Carolina statute to purchase the bond in order to become licensed as a grain dealer. See N.C.Gen.Stat. § 106-602. As prescribed by statute, see id. § 106-605, the obligee of the bond was the State of North Carolina; payment was triggered if Autry failed to comply with its statutory duties as a grain dealer, which included a requirement promptly to pay for grain. Although the State was the legal obligee, it was required to distribute the proceeds to producers whom the grain dealer did not pay.
On February 8, 1982, Autry filed for bankruptcy under Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 1101, et seq.[1] At the time it filed its petition, Autry had not paid various grain suppliers. As a result, Nationwide became obligated under the bond to pay the sum of $10,000 to the State for the benefit of the unpaid grain suppliers. Because the claims of these unpaid farmers exceeded the face amount of the bond, Nationwide was faced with a risk of liability greater than the $10,000 sum it had agreed to pay. To avert the prospect of excessive liability, Nationwide prudently filed an interpleader action, naming as defendants the unpaid suppliers and the North Carolina Department of Agriculture. Cf. State Farm Fire & Casualty Co. v. Tashire, 386 U.S. 523, 87 S.Ct. 1199, 18 L.Ed.2d 270 (1967) (interpleader proper where sum of claims against insurer exceeds its contractual liability). This action was filed in the bankruptcy court; jurisdic *132 tion was based on 28 U.S.C. § 1471(c).[2] See also Bankruptcy Rule 722 (incorporating Fed.R.Civ.P. 22(1)) (currently codified as Bankruptcy Rule 7022).
Nationwide deposited the proceeds of the bond with the court and in its complaint asked to be dismissed from the action and that future suits against it by defendants be enjoined. Notably, Nationwide then disclaimed any interest in the fund. The bankruptcy court determined that the action was appropriate for interpleader, ordered the verified interpleader complaint to be served on all defendants, and directed defendants to file responses and defenses, if any, within twenty days. The court’s order further stated that in the absence of the filing of such responses or defenses, the plaintiff “will thereupon be dismissed from [the] action and discharged from any and all liability to defendants.”
After six months had passed, no defendant having responded to the action other than by simply filing proofs of claims in the bankruptcy case, Nationwide moved for a default judgment on all defendants. The bankruptcy court entered a default judgment which in terms discharged all of defendants’ claims against Nationwide as surety of Autry’s bond. The court did not determine the disposition of the bond proceeds and the proceeds remained deposited with the court.[3]
Following entry of the default judgment, the trustee of Autry’s estate filed a motion to intervene in the interpleader action, alleging that the bond proceeds were part of the estate. After a hearing, the bankruptcy court entered an order granting the motion. At the trial of the adversary proceeding, the parties, now including only Nationwide and the trustee, agreed that there was no factual dispute. The sole contested issue was whether appellant was entitled to the bond proceeds. The bankruptcy court concluded that it would be inequitable to return the proceeds to Nationwide, a disinterested stakeholder, simply because the interpleader defendants did not file answers to the complaint. For this reason, the court denied Nationwide’s request that the proceeds be returned, and directed the trustee to fashion an order for apportionment of bond proceeds. The court did not determine whether the bond proceeds were the property of the estate.
II
It is presumably not often that every named defendant to an interpleader action declines to appear and accept his share of a fund uncontestedly put at his disposal. The narrow issue on this appeal is whether, given this unique turn of events, the unclaimed money should be returned to the stakeholder or whether it should be distributed in accordance with a plan to be fashioned by the intervening bankruptcy trustee. Nationwide argues that the bond proceeds are not property of the debtor’s estate because Autry had no legal or equitable title to them and, therefore, that the trustee is not entitled to distribute them. The trustee contends that Nationwide received all that it asked for in its complaint — to be dismissed and have the claims discharged — and that it would be unjust also to award it the fund that it concededly owed.
*133 We do not agree with Nationwide that disposition of this case turns on whether the bond proceeds were a part of the debtor’s estate. As did the bankruptcy court, we find it unnecessary to resolve this question. It is clear that the bankruptcy court properly exercised jurisdiction over the interpleader action. See 28 U.S.C. § 1471(c) (discussed in footnote 2). An award to the bond beneficiaries, who comprised a majority of the unsecured creditors, would reduce the unsecured claims against the estate thereby giving the remaining unsecured creditors a larger share of Autry’s estate. The bankruptcy court’s jurisdiction thus did not depend on the bond proceeds being classified as property of the debtor’s estate. Nor is it argued that the action was not properly brought as an interpleader action; Nationwide clearly faced conflicting claims exceeding the face amount of the bond. This is therefore not a case in which interpleader simply will not lie. See Francis I. duPont & Co. v. O’Keefe, 365 F.2d 141, 143 (7th.Cir.1966) (if court determines that interpleader will not lie, clerk should be directed to return deposit to interpleading party).
We further hold that the bankruptcy court did not err when it permitted the trustee to intervene. See Bankruptcy Rule 724 (Fed.R.Civ.P. 24 applicable in adversary proceedings) (currently codified as Bankruptcy Rule 7024). Although intervention did not occur until after entry of the default judgment, the trustee had no need to intervene until that time. Cf. J. Moore & J. Kennedy, 3B Moore’s Federal Practice 24-154 to 24-156 (noting that under proper circumstances, trial court may exercise its discretion to permit intervention after entry of judgment). After the named defendants defaulted, the trustee, as primary representative of unsecured creditors, had a sufficient interest in the fund, by virtue of its relationship to outstanding unsecured claims, to justify his intervention.[4] See In re Raabe, Glissman & Co., 71 F.Supp. 678, 681 (S.D.N.Y.1947) (unsecured creditor permitted to intervene in order to assert interest in unclaimed funds deposited with bankruptcy court).
Nationwide, by its own admission, is a disinterested stakeholder. Although it was not precluded from doing otherwise, see Fed.R.Civ.P. 22(1), it originally sought only to be dismissed from the action and have the claims against it barred. Having failed to plead an interest in the fund, Nationwide cannot now claim that it is entitled to the bond proceeds. See 3A Moore’s Federal Practice at 22-93 & n. 4 (“If the stakeholder desires to dispute the amount of his obligation, in whole or in part, it is necessray that he ... plead that the amount is disputed and that only a specified amount or none thereof is admitted to be due.”).[5] This conclusion is buttressed by consideration of equitable principles which, after all, constitute “the genesis of interpleader.” Humble Oil & Refining Co. v. Copeland, 398 F.2d 364, 368 (4th Cir.1968). Equity dictates that an inter-pleader plaintiff who is in fact a disinterested stakeholder is not entitled to a return of the deposited fund in a case where the named interpleader defendants default and another party is properly allowed to intervene. *134 Cf. Bricks Unlimited, Inc. v. Agee, 672 F.2d 1255, 1261 (5th Cir.1982) (“In determining the order of distribution of the interpleaded funds, we sit as a court of equity, and possess the remedial flexibility of a chancellor in shaping our decree so as to do complete equity between the parties.”).
Ill
The narrow question on this appeal is whether the bankruptcy court properly declined to remit the proceeds of the grain dealer’s bond to Nationwide. Nationwide has no standing to challenge the actual disposition of the proceeds and we need not express any opinion as to whether the estate, the bond beneficiaries, or even the state, is entitled to the fund. Cf. N.C.Gen.Stat. § 116B-14 (any funds owing by an insurer that are due and payable shall be presumed abandoned if they have not been claimed within five years and shall escheat to the State). Any challenge to the disposition ultimately made by the bankruptcy court must be by parties with the requisite stake in the outcome. This, essentially, is where the bankruptcy court’s order has properly left the matter,[6] and that order is therefore
AFFIRMED.

. The case was subsequently converted to a proceeding under Chapter 7.

. Section 1471(c), in conjunction with § 1471(b), provides that bankruptcy courts shall have jurisdiction over all civil proceedings "related to” cases under title 11. The relationship between the interpleader action and the bankruptcy case involving Autry was manifest. Since the bond beneficiaries were also unsecured creditors of Autry, any payment of the bond proceeds to the beneficiaries would simultaneously reduce the beneficiaries' unsecured claims against the estate, thereby making available a larger share of the estate for other unsecured creditors.
In Northern Pipeline Construction Co. v. Marathon Pipeline Co., 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), the Supreme Court held that § 1471(c) constituted an unconstitutional delegation of judicial power to a non-Article III court. Because the complaint in this action was filed during the period in which the Marathon judgment was stayed, Marathon does not affect this case. See Gray v. Snyder, 704 F.2d 709 (4th Cir.1983).

. In its motion for default judgment, Nationwide first requested that the court return the proceeds to it.

. Following the default of the named defendants, the trustee was the single remaining claimant to the fund. Although interpleader is proper only where there are two or more claimants to a fund, we do not think that the court in this case was bound to dismiss the action following the entry of the default judgment. Clearly, if all but one named interpleader defendant defaulted, the remaining defendant would be entitled to the fund. A similar result should obtain where, as here, a party properly intervenes as claimant following the entry of a default judgment against the original parties. See New York Life Insurance Co. v. Connecticut Development Authority, 700 F.2d 91, 95 (2d Cir.1983) (defaults of interpleader defendants "did not make the interpleader action inappropriate but merely expedited its conclusion by obviating the normal second stage,” in which adverse claimants’ rights to the fund are settled).

. Nationwide has requested this court to reverse the bankruptcy court, or, in the alternative, to allow it to amend its complaint in order to assert an interest in the fund. Because the only "interest” claimed by Nationwide results from the failure of other parties to assert their acknowledged claims to the fund, we refuse to allow such an amendment.

. 28 U.S.C. § 1293(b) gives to the courts of appeals jurisdiction over final judgments or orders of a bankruptcy court, provided that the parties agree to take a direct appeal. Although the bankruptcy court’s order in this case leaves unresolved the ultimate disposition of the fund, the order is sufficiently final to give this court jurisdiction. Because appellant has no standing to challenge the disposition of the fund, the order is final in respect of the question raised by this appeal.